## HALBERT et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. June 29, 1923.)

No. 3812.

**1. Criminal law ⬅159(2)—Circuit Court of Appeals cannot determine weight of evidence.**

The Circuit Court of Appeals has no authority, under Rev. St. § 1011 (Comp. St. § 1672), to determine the weight of the evidence, and therefore, if the verdict is sustained by any substantial evidence, the conviction must be affirmed.

**2. Conspiracy ⬅47—Evidence held to sustain conviction of conspiracy to steal cotton seed meal from interstate shipments.**

Evidence that cotton seed meal had been stolen from cars destined for interstate shipment in quantities showing it must have occurred where the meal could be stored, which could have been only at the warehouse of which one defendant was manager, with proof that sacks of such meal were unloaded at the warehouse and the tags taken therefrom and burned, and that the manager had sold such meal on his own account, some of it below market price, and that the other defendant, who was in charge of switching the cars, alone could have placed them at the warehouse and likewise was interested in the market for such meal, *held* sufficient to sustain a conviction of the two defendants for conspiracy to steal the meal from interstate shipments.

**3. Criminal law ⬅159(4)—Credibility of witnesses is jury question.**

Questions of the credibility of witnesses are peculiarly questions for the jury.

**4. Criminal law ⬅412(3)—False statement by accused in attempting to explain incriminating circumstances may be considered on question of guilt.**

A false statement, made in an effort to explain incriminatory circumstances, may be considered by the jury in determining the question of guilt or innocence of the accused.

**5. Witnesses ⬅323—Government can cross-examine its own witness as to contradiction with earlier sworn statement.**

Where a witness called by the government made a statement in his testimony differing in a material respect from his earlier sworn statement, the government had a right to cross-examine him, not for the purpose of introducing his affidavit as substantive proof against accused, but to determine the weight to be given the testimony of that witness.

**6. Criminal law ⬅419, 420(3)—Evidence of attempt to locate person from whom defendant claimed to have purchased property held competent.**

In a prosecution for conspiracy to steal cotton seed meal, where one defendant had claimed he purchased the meal sold by him from a named individual in a designated town, evidence by a witness for the government that he had gone to that town and made diligent inquiry from the tax collector, the sheriff, the chief of police, the postmaster, and the railroad agent, but was unable to locate that individual, or any one that knew him, was competent at least to show why the government failed to produce that individual as a witness.

**7. Witnesses ⬅380(2)—Statements by one defendant to government agent held competent to affect his credibility.**

In a prosecution against two defendants for conspiracy, statements made by one of the defendants to a government witness were clearly admissible against that defendant, and where that defendant had been offered as a witness and had testified to substantially the same matters, the court properly instructed the jury to consider the testimony as to the statements in determining the credibility of that witness.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Criminal law ⬥⇒829(1)—Requested charges covered by general charge were properly refused.**

Instructions requested by accused were properly refused, where, in so far as they were pertinent, they were substantially covered in the general charge, which clearly stated the law applicable to the facts.

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

J. T. Halbert and another were convicted of conspiracy to steal cotton seed meal from interstate shipments of freight, and they bring error. Affirmed.

A. B. Galloway, of Memphis, Tenn. (A. B. Galloway and Wm. F. Farrell, both of Memphis, Tenn., on the brief), for plaintiffs in error.

W. H. Fisher, Asst. U. S. Atty., of Memphis, Tenn. (S. E. Murray and A. A. Hornsby, all of Memphis, Tenn., on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. T. J. Halbert and C. A. Cleaves were indicted for conspiracy to steal cotton seed meal from interstate shipments of freight. Halbert was the manager of the Riverside Elevator & Warehouse Company, which company had a warehouse located on the Frisco Railroad tracks in Memphis, Tenn., between the location on said tracks of the plant of the Union Seed & Fertilizer Company and the Frisco interchange tracks, where cars from the warehouse tracks were received and placed in trains on the main tracks to be hauled to their destination. Cleaves was engine foreman on the Frisco Railroad. It was his duty to switch all cars from the warehouse and factory tracks to the interchange tracks. This required him to bring the loaded cars from the Union Seed & Fertilizer Company, past the Riverside Elevator & Warehouse Company's warehouse, to the point where they were distributed to trains on the Frisco interchange tracks.

The overt acts alleged in the indictment were in substance as follows: First, that Cleaves, on February 12, 1919, switched Missouri Pacific car No. 40784, containing cotton seed meal consigned by the Union Seed & Fertilizer Company to the order of the American Cotton Oil Company at Winchester, in the state of Indiana, which car was then and there moving in interstate commerce, to the warehouse operated by Halbert in Memphis, Tenn.; second, that Halbert on the 12th day of February, 1919, caused to be unloaded 200 sacks of cotton seed meal from Louisville & Nashville Railroad car No. 16104, which was then and there moving in interstate commerce, being a part of the shipment made by the Union Seed & Fertilizer Company to the American Cotton Oil Company at Anderson, in the state of Indiana. The jury returned a verdict of guilty. A motion for a new trial was overruled, and sentence was imposed.

[1] It is contended on the part of the plaintiffs in error that the verdict of the jury is not sustained by the evidence. This court has no authority to determine the weight of the evidence. Section 1011,

⬥⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

R. S. (Comp. St. § 1672). If the verdict is sustained by any substantial evidence, then the judgment of the trial court must be affirmed. Howard et al. v. U. S. (C. C. A.) 271 Fed. 301 and cases there cited.

[2] Upon this proposition it is sufficient to say that the verdict is sustained by substantial evidence tending to prove, beyond a reasonable doubt, facts and circumstances from which the natural inference arises that the defendants were engaged in the unlawful conspiracy charged in the indictment, and that the overt acts therein alleged were committed by the defendants in furtherance of a common design, intent, understanding, and agreement to accomplish the unlawful purpose of the conspiracy as set forth in the indictment. Davidson v. U. S. (C. C. A.) 274 Fed. 285, 287 and cases there cited.

The jury was entirely justified in finding, from the evidence offered by the government, beyond a reasonable doubt, that cars in interstate shipment, loaded with cotton seed meal by the Union Feed & Fertilizer Company were broken open and large quantities of meal taken therefrom somewhere between the Union Feed & Fertilizer Company's plant and the Frisco interchange tracks. The evidence also tends to prove that the character and bulk of the property stolen was such that it could not have been taken from the car, except at some place along the tracks where it could be stored and concealed in a building, and that the warehouse managed by Halbert was the only building available for this purpose, between the plant of the Union Feed & Fertilizer Company and the interchange track; that cars were placed by Cleaves at the platform of the warehouse of the Riverside Elevator & Warehouse Company, and that laborers there employed, under the direction of Halbert, removed cotton seed meal therefrom, after which the cars were resealed and taken away by Cleaves; that, in pursuance of directions given by Halbert, tags upon the sacks taken from these shipments were removed from the sacks and burned; that the Union Feed & Fertilizer Company had lost a number of its seals, and that Cleaves at one time had delivered a bunch of car seals to Halbert; that Halbert sold a large quantity of cotton seed meal on his own private account; that some of this meal was sold for substantially less than the market price; that Halbert could not have obtained possession of cars loaded by the Union Feed & Fertilizer Company for the purpose of removing cotton seed meal therefrom without the co-operation of Cleaves, who was in sole charge of switching them from the plant of the Union Feed & Fertilizer Company to the interchange tracks of the Frisco Railroad.

There is also evidence in this record tending to prove that Cleaves manifested some interest in the market for cotton seed meal, although it is not disclosed by the evidence that he was at that time legitimately interested in the purchase or sale of this commodity. The defendants by their own testimony attempted to explain these incriminating facts and circumstances upon a theory consistent with their innocence; but the jury evidently found that their testimony in this respect was untrue.

[3, 4] Questions of credibility of witnesses are peculiarly for the jury. Howard v. U. S., supra; Rochford v. Penna. Co., 174 Fed. 81,

98 C. C. A. 105. A false statement made in an effort to explain incriminatory circumstances may be considered by the jury in determining the question of guilt or innocence of the accused. Therefore, if the jury disbelieved the evidence of Halbert in reference to his transactions in cotton seed meal on his private account, then his attempted explanation was more hurtful than helpful to the cause of both defendants.

[5] It is also assigned as error that the court permitted the government to cross-examine its own witness, Clifton Harris, in reference to a sworn statement made by him prior to the trial of the case. It appears from the record that the testimony of Harris differed in at least one material respect from his earlier sworn statement. For this reason the government had a right to cross-examine him, not for the purpose of introducing the affidavit, or any statements made in the affidavit, as substantive proof of the alleged conspiracy, but for the purpose of determining the weight to be given to the testimony of this witness.

[6] It is also insisted that the court erred in permitting a witness for the government to testify that he had gone to Greenwood, Miss., for the purpose of locating J. W. White, the person from whom Halbert said he had purchased this cotton seed meal; that while in Greenwood, Miss., he made diligent inquiry from the tax collector, the sheriff, the chief of police, the postmaster, and the railroad agent, but was unable to locate White or any one that knew him. The witness was not permitted to relate any conversation had by him with any person in Greenwood, but merely to detail the extent and the result of his efforts to locate White. If the government challenged the truth of Halbert's statement in reference to his obtaining this cotton seed meal from White, it would naturally be expected to produce White as a witness to disprove Halbert's testimony, or explain by competent evidence its failure to do so. The testimony of this witness was at least competent for the purpose of showing why the government had failed to produce White as a witness. The weight to be given this testimony was a question for the determination of the jury, depending entirely upon the diligence and thoroughness of the efforts the witness had made to locate White.

[7] It is also claimed that it was error to permit testimony of statements made by Halbert to the witnesses Griffin and McElvin when they were investigating the losses from interstate shipments. These statements were clearly admissible against Halbert, and Halbert having been offered as a witness on the part of the defendants, and having testified to substantially the same matters, the court properly instructed the jury to consider the testimony in reference to the statements made by Halbert to McElvin and Griffin in determining the credibility of the defendant Halbert.

[8] It is further insisted upon the part of the plaintiffs in error that the court erred in refusing to give specific instructions requested by the defendants. These instructions were properly refused. In so far as they were pertinent, they were substantially covered in the gen-

eral charge, which clearly states the law applicable to the facts of this case.

There are a number of other assignments of error, in reference to the sufficiency of the indictments and the admission of evidence, that in the opinion of this court are without merit, and it is therefore unnecessary to discuss them in detail.

For the reasons stated, the judgment of the District Court is affirmed.