## JOHNSON v. NEWTON.

Court of Appeals of District of Columbia.

Submitted March 5, 1928.   Decided April 2, 1928.

Petition for Rehearing Denied April 21, 1928.

No. 4654.

1. Wills ⊕⇒55(7)—Evidence held to establish testamentary capacity.

Evidence in will contest held, to establish testatrix's testamentary capacity at time of making will.

2. Wills ⊕⇒163(1), 324(3)—Facts and circumstances surrounding execution of will held not to create presumption of undue influence, entitling contestant to go to jury on issue.

Facts and circumstances surrounding making of will held, insufficient to create presumption of undue influence, entitling contestant to go to jury on such issue.

3. Wills ⊕⇒53(1)—Testimony as to value of testatrix's home held properly excluded, as shedding no light on issue of testamentary capacity.

Testimony as to value of testatrix's home, devised by will contested, held, properly excluded, as shedding no light on issue of testamentary capacity, in absence of evidence that testatrix did not fully comprehend nature and extent of her estate or her family connections.

4. Wills ⊕⇒370—Exclusion of attesting witness' statement, not in record and conceded to have bearing on issue of testamentary capacity, held not error.

In will contest, refusal to permit introduction of statement, procured by contestant from testatrix's nurse, who was witness' to will, held not error, where such statement was not in record, and it was conceded that only statement therein which was not read had some bearing on issue of testatrix's mental capacity.

5. Depositions ⊕⇒111(3)—Will contestant, surprised when her witness' deposition was taken, should have interrogated witness concerning inconsistent prior statements.

If will contestant was surprised when her witness' deposition was taken, witness should have been interrogated concerning alleged inconsistent prior statements, and given an opportunity to explain them.

6. Witnesses ⊕⇒397—Attesting witness' statement, inconsistent with subsequent deposition, could have been received in will contest only to affect credibility (Code, § 1073a).

Under Code, § 1073a, statement procured by will contestant's counsel from testatrix's nurse, who was witness to will, could have been received only for purpose of affecting witness' credibility, if inconsistent with her statements in deposition subsequently taken.

Appeal from the Supreme Court of the District of Columbia.

Proceeding by Amanda A. Newton to probate the will of Dorothea Nixon, deceased, contested by Dorothy M. Johnson. Judgment for proponent, and contestant appeals. Affirmed.

G. M. Johnson and W. C. Sullivan, both of Washington, D. C., for appellant.

L. R. Alden and J. E. Laskey, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice.   Appeal from a judgment in the Supreme Court of the District admitting to probate and record as the last will and testament of Dorothea Nixon a paper writing dated December 13, 1924; the court having directed the jury to return a verdict for the caveatees on the issue of undue influence, and the jury having returned a verdict for the caveatees on the issue as to the execution of the will and testamentary capacity.

Mrs. Nixon was about 75 years old when she made her will, and the evidence indicates that she was a lady of education and intelligence. Her husband's death preceded hers by about 2 weeks. They left no children. The appellee, Amanda A. Newton, was a sister of the testatrix, and resided nearby in a home of her own. Miss Emma Nixon, a sister-in-law, had recently undergone surgical treatment, and the testatrix had expressed a desire to help her. The testatrix also had expressed affection for and a desire to remember in her will her niece, Mrs. Eleanor P. Stone, and her niece's daughter, Ellen N. Stone. There was evidence that she did not entertain the same affection for the appellant, another niece.

[1] Testatrix had suffered a partial stroke of paralysis, but, according to the testimony of the day nurse who attended her, "she had been out of bed the day before" the will was made, "and only went to bed the day before she died." Her condition was such, however, that Mrs. Stone, who resided in Boston, and whom the testatrix desired to see, was sent for, and came to Washington, arriving at her aunt's home on the morning of December 13th. Testatrix manifested pleasure at seeing her. In talking with Mrs. Hall, the day nurse, Mrs. Stone learned that her aunt

had been asking for a lawyer. Thereupon Mrs. Stone asked Miss Newton, the appellee, whether her aunt had made a will, and Miss Newton answered "that there was no will to her knowledge." Mrs. Stone then asked her aunt whether she would like to make a will, and her aunt replied in the affirmative. Mrs. Mary Jane Thompson, a neighbor, then was summoned and asked to write a will for Mrs. Nixon. There were present while the will was being prepared, besides Mrs. Thompson, a Mrs. Cassell, another neighbor, Mrs. Hall, the nurse, and Mrs. Stone.

Mrs. Nixon said that she wanted her sister-in-law, Emma Nixon, to have $500. Thereupon Mrs. Stone said: "What about this house? Whom do you wish to have the house, should anything happen to you? Would you care for Dorothy [appellant] to have the house, or Rosalie [another niece]?" The testatrix said, "No." Mrs. Stone then asked, "Would you care to have Aunt Amanda have the house?" Testatrix replied that Aunt Amanda already owned a home. Mrs. Stone then asked, "Whom do you want to have the house, Aunt Doll?" and testatrix replied, "I want you and Tootie (Mrs. Stone's daughter) to have the house." Mrs. Stone then asked, "What about your lot on Wisconsin avenue?" and her aunt replied, "The lot is sold." Mrs. Stone then asked: "Aunt Doll, whom do you want to have the lot money, and any other cash that you might have after necessary expenses are paid? Do you want Dorothy or Rosalie to have this money?" Mrs. Nixon replied: "No I do not want them to have this money; they have never done anything for me. I want Amanda to have the money."

Mrs. Thompson wrote out the will as the testatrix had directed. Whereupon testatrix asked for her glasses and carefully read what had been written. Owing to the condition of her hand, due to the paralysis, she made a cross. The will was duly witnessed by Mrs. Cassell, Mrs. Thompson, and Mrs. Hall. Testatrix died the next day.

The overwhelming weight of the evidence was to the effect that the testatrix possessed testamentary capacity. Three days prior to the execution of her will, she executed a deed to the "lot on Wisconsin avenue" at the instance of Mr. Johnson, the husband of appellant, and her capacity to do so is not questioned. The evidence conclusively shows that her mental condition had not materially changed at the time she made her will.

[2] As stated in the brief of counsel for appellant, the principal grounds on which the appeal is brought are "the action of the trial judge in directing a verdict * * * on the issue of undue influence, and the refusal of the trial judge to permit a qualified witness to testify concerning the value of real estate devised in the will."

As to the first of these grounds, it is not contended that there was any direct evidence of undue influence; but it is argued that the facts and circumstances surrounding the making of the will created a presumption of undue influence, entitling the appellant to go to the jury on that issue. We are of a different view. Freitag v. Freitag, 47 App. D. C. 1, 5; Wenck et al. v. Riggs National Bank, 57 App. D. C. 333, 23 F.(2d) 754. In Beyer v. Le Fevre, 186 U. S. 114, 22 S. Ct. 765, 46 L. Ed. 1080, the court said: "Whatever rule may obtain elsewhere, we wish it distinctly understood to be the rule of the federal courts that the will of a person found to be possessed of sound mind and memory is not to be set aside on evidence tending to show only a possibility or suspicion of undue influence. The expressed intentions of the testator should not be thwarted without clear reason therefor." There is no evidence in this case that any one of the beneficiaries under the will sought in the slightest degree to influence the testatrix. Disinterested neighbors were present, and, if such an attempt had been made, their testimony would have indicated it. The court was right in refusing to submit the issue to the jury.

[3] The offer of testimony as to the value of the house devised by the will was based "on the issue of unsoundness of mind." There was no evidence whatever that the testatrix did not fully comprehend the nature and extent of her estate or her family connections. It appeared that this house was the home of the testatrix, and in the circumstances the evidence as to the value of this home would shed no light on the issue of testamentary capacity.

[4-6] Shortly after the death of the testatrix, counsel for appellant procured statements from the witnesses to the will, and subsequently took the deposition of Mrs. Hall, the nurse, on the ground that she was about to leave the jurisdiction and might not return. At this time she was asked to identify her signature to the previous statement, and she was cross-examined by appellant's attorney concerning the statement; but it was not offered in evidence. The refusal of the court to permit the introduction of this previous statement in evidence is assigned as error. In the first place, the statement is not

in the record, and it is conceded that the only statement in it which was not read "has some bearing on the mental capacity of the decedent." Mrs. Hall was appellant's witness, and, if appellant was surprised when Mrs. Hall's deposition was taken, the witness should have been interrogated concerning alleged inconsistent prior statements, and given an opportunity to explain them. Hickory v. United States, 151 U. S. 303, 14 S. Ct. 334, 38 L. Ed. 170. No foundation was laid for the introduction of this statement, which in any aspect could have been received "for the purpose only of affecting the credibility of the witness." Code, § 1073a.

We have carefully examined the other assignments of error, and find them devoid of merit. The judgment is affirmed, with costs.

Affirmed.