BEDELL v. UNITED STATES.
No. 5973.

Court of Appeals of the District of Columbia.
Argued Dec. 4, 1933.
Decided Jan. 2, 1934.

Harry T. Whelan and W. B. O'Connell, both of Washington, D. C., for appellant.

Leo A. Rover, U. S. Atty., and John J. Sirica, Asst. U. S. Atty., both of Washington, D. C.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a conviction and sentence in a criminal case.

The appellant William E. Bedell, and James E. Grove, William F. Cush, and August Pagliocchini were indicted in the District of Columbia upon a charge of housebreaking and larceny. The defendant Grove pleaded guilty to the indictment when he was arraigned. The defendant Pagliocchini pleaded not guilty when arraigned, but upon the conclusion of all the evidence changed his plea to guilty. The court directed a verdict of not guilty in favor of Cush at the close of the government's case. Accordingly the charge against Bedell was the only issue submitted to the jury for a verdict.

The jury returned a verdict of guilty against Bedell. His motion for a new trial was overruled by the court and he was sentenced accordingly. He now appeals from that judgment to this court.

It appears that about 1 o'clock on the morning of July 26, 1932, the plant of the Breyer Ice Cream Company, located within

the District of Columbia, was feloniously entered by three armed men. The watchman, a colored man named Lee, who was on duty at the time, was seized and bound with wire. The men broke into the safe and stole about $900 which it contained.

In the month of August following Grove and Pagliocchini were placed under arrest, and shortly afterwards Bedell and Cush likewise were arrested, charged with the commission of the crime. On August 31 Grove, after he had been warned of his rights by police officers, and in the presence of his father, who was a member of the park police, and of other members of the Metropolitan Police Department, made a statement which not only implicated himself but also Bedell, Cush, and Pagliocchini as the persons who committed the crime. The statement was reduced to writing and was signed by Grove.

At the trial of the case the government called Grove as a witness in chief. In answer to questions put to him by counsel, Grove testified that he knew Cush, Pagliocchini, and Bedell; but he denied that he had seen Bedell on the night of the crime, and stated that Bedell had no part in it. Thereupon the government counsel announced that he was taken by surprise by this answer, and asked leave of court to cross-examine the witness. The court granted leave to the government's counsel to question the witness concerning his prior written statement. Bedell objected and excepted to this ruling. The court, however, ruled that the writing could not be introduced as evidence in the case, but could be used only in the cross-examination of Grove. Thereupon in the presence of the jury the government's counsel read material parts of the statement to Grove and asked him if they were true as made. Grove admitted that he had signed the written statement, but testified that it was not true, and denied that he had seen Bedell upon the night in question.

The present appeal presents but a single substantial assignment of error, which is stated by appellant as follows: "3. The court erred in permitting counsel for the Government to cross-examine the witness Grove regarding a statement alleged to have been made by him to the police department out of the presence of the defendant, Bedell, and in permitting the United States attorney to read in the presence of the jury parts of the statement."

The court in charging the jury upon this subject spoke as follows:

"Now, the questions which the district attorney asked and which implied, of course, that Grove has given testimony implicating Bedell, must be disregarded by you entirely. I know you can do it. There is no evidence in this case against Bedell that was given by Grove. There is not any doubt about that. No matter whether he is a liar or a thief or what he is, so far as this case goes he has given no evidence on the stand against the defendant Bedell.

"The evidence against Bedell, the only direct evidence against Bedell, is the identification by the old colored man, Lee, I think his name was, and his testimony must be weighed by you very carefully, indeed, to the end that no mistake be made. I will not attempt to go over it all. You heard his testimony. You saw his appearance on the stand. You were able to judge of the condition of his eyesight and his apparent intention to tell the truth or not tell the truth, the evidence of his appearance as indicating his intelligence and his knowledge of what he saw, his ability to state what he saw, his ability to answer questions—all those things were done right before your eyes, and it is for you to consider them very carefully indeed in weighing the evidence which he gave identifying the defendant Bedell as one of the men he saw there that night."

No exception was taken to the charge.

We cannot agree with the contention of the appellant. When the government called Grove as a witness, it gave him credit with the jury as a truthful and reliable witness. Grove's testimony, however, was directly contradictory to the statements made by him to the government's counsel prior to the trial. The counsel were manifestly taken by surprise by this testimony. Had the testimony gone to the jury without further examination concerning Grove's sincerity, accuracy, and truthfulness, the jury would have received these statements as testimony called for and introduced by the government itself. Under such circumstances it was proper that the government might cross-examine Grove, and for that purpose make use of his prior written statement in order to refresh his recollection and induce him to correct his testimony. In such case the latitude to be allowed in the cross-examination of the witness is within the discretion of the trial justice. This rule is supported by abundant authority.

Section 1073a of the District of Columbia Code (D. C. Code 1929, T. 9, § 21) provides as follows: "Whenever the court shall be satisfied that the party producing a witness has been taken by surprise by the testimony of such witness, such party may, in the discre-

tion of the court, be allowed to prove, for the purpose only of affecting the credibility of the witness, that the witness has made to such party or to his attorney statements substantially variant from his sworn testimony about material facts in the cause; but before such proof can be given the circumstances of the supposed statement sufficient to designate the particular occasion must be mentioned to the witness, and he must be asked whether or not he made such statements and if so allowed to explain them."

In Smith v. United States, 57 App. D. C. 71, 17 F.(2d) 223, we held that in a prosecution for robbery, where accomplice as state's witness categorically denied every material statement contained in a written statement previously made by him, it was not error under Code, section 1073a, to permit the government, on showing of surprise, to question the witness concerning such written statement, and to read it to the jury. And that the latitude to be allowed in the examination of a witness, who has testified contrary to expectations and prior written statement, is within the discretion of the trial judge. In Owens v. United States, 61 App. D. C. 132, 58 F.(2d) 684, this rule was approved. The government called a witness who in an interview with the district attorney theretofore had made and signed a statement as to his knowledge of the facts concerning which he was to testify. His testimony being inconsistent with the signed statement, the government claimed surprise and sought and obtained permission to cross-examine the witness. Whereupon counsel for the government showed the witness the statement and obtained from him an acknowledgment that the signature was his. Counsel were permitted to examine him as to the contents of the paper in conformity with the rule announced in Smith v. United States, supra. In Di Carlo v. United States (C. C. A.) 6 F.(2d) 364, it was held that the latitude allowed prosecution in examining its recalcitrant witness is wholly within discretion of trial judge, and questions may extend to cross-examination and inquiry whether witness has not at other times made contradictory statements, so that jury may gather truth from his whole conduct and bearing.

In Halbert v. United States (C. C. A.) 290 F. 765, it is stated where a witness called by the government made a statement in his testimony differing in a material respect from his earlier sworn statement, the government had a right to cross-examine him, not for the purpose of introducing his affidavit as substantive proof against accused, but to deter-

mine the weight to be given the testimony of that witness. In Sneed v. United States (C. C. A.) 298 F. 911, it is held that where the prosecution was surprised by the testimony of one of its own witnesses, who not only did not testify as expected, but on cross-examination testified to facts contradicting those to which he was expected to testify, it was not error to admit in evidence a sworn statement made by the witness, on which the prosecution relied in calling him. See, also, Beavers, v. United States (C. C. A.) 3 F.(2d) 860; Hickory v. United States, 151 U. S. 303, 14 S. Ct. 334, 38 L. Ed. 170.

In view of the foregoing authorities and of the careful and accurate charge given by the court to the jury, we feel that the assignment of error above set out is not sustained by the record.

The judgment of the lower court is accordingly affirmed.