## BYRD v. DISTRICT OF COLUMBIA.
### No. 285.

Municipal Court of Appeals for the
District of Columbia.
June 25, 1945.

 

owner or tenant) occupying such unit or units."

The single issue developed at the trial was whether defendant furnished sleeping accommodations to more than four persons "for a consideration." A police officer testified that defendant admitted that she and nine other persons, none of whom was claimed to be a member of her immediate family, slept in the house; that four of them paid rent; that three paid no rent because they were defendant's relatives; that the remaining two paid no rent because one of them, William Mason, "takes care of the house," and the other, Joyce Alexander, "helped in the house." The District called as witnesses the four "paying" roomers, who testified to their financial arrangements for their rooms; the three relatives, who testified they occupied rooms in the house but paid no rent; and Joyce Alexander, who testified that she stayed at the house only on occasional overnight visits and paid no rent. William Mason did not appear as a witness.

At the close of the Government's testimony the defendant moved for a dismissal on the ground that no case had been made out within the meaning of the regulation. The motion was denied and defendant declined to offer any evidence in her behalf. A finding of guilt and imposition of sentence followed, and this appeal was taken.

Appellant's position is that the testimony disclosed that only four people occupied sleeping accommodations for a consideration, and that William Mason cannot be considered within this category. The District's contention is that in addition to the four "paying" roomers, William Mason, who occupied a room but paid no rent because he took care of the house, occupied sleeping accommodations for a consideration within the meaning of the regulation.

We think it is clear that one who occupies a room in consideration for services rendered occupies sleeping accommodations "for a consideration" just as much as one who pays rent in the form of money. From the defendant's admission it was possible for the trial court to conclude that William Mason occupied a room in the house for which he rendered service in taking care of the house. Appellant, however, insists that since the testimony did not show the nature of the services rendered by Mason he must be considered as having the status of a servant or employee and not that of a roomer. It is

Joseph A. McMenamin, of Washington, D. C., for appellant.

Henry E. Wixon, Asst. Cor. Counsel, of Washington, D.C. (Richmond B. Keech, Corp. Counsel, Vernon E. West, Principal Asst. Corporation Counsel, and John Nesbitt, Asst. Corp. Counsel, all of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

Appellant was convicted on a charge of operating a rooming house without first having obtained a license therefor. Regulations promulgated by the Commissioners of the District of Columbia define a rooming house as follows:

"The term 'rooming house' shall mean any building or part thereof, other than a hotel or private club, containing sleeping accommodations occupied for a consideration by more than four persons who are not members of the immediate family of the owner or lessee of such building or part thereof, which said sleeping accommodations do not form a separate household unit or units with bath and kitchen exclusively for the use of the persons (not members of the immediate family of the

common knowledge that many servants are partially compensated by room and board, and we think the regulation did not intend that servants be counted toward the "more than four persons" occupying the house. But this is in the nature of an exception to the regulation and we think that when the District proved that William Mason occupied a room in the house for a consideration in the form of services, the District made out a case. Of course, the burden of proof was upon the prosecution, but even in a criminal proceeding the burden of going forward with the evidence may be shifted to the defense. Bradford v. United States, 5 Cir., 130 F.2d 630, certiorari denied 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547. This is particularly true when the defendant relies upon an exception in the law, for the burden is upon the defendant to bring himself within the exception, rather than the prosecution to negative it. Williams v. United States, 78 U.S.App.D.C. 147, 138 F.2d 81, 153 A.L.R. 1213. It is both just and practicable that this should be so in this case, for the facts establishing the relationship of master and servant rather than landlord and roomer were "peculiarly within the knowledge of the defendant." Williams v. United States, supra.

If this were all to the case, we should be compelled to affirm; but we think there was error in the reception of certain evidence. Walter Steptoe was called as a witness for the District. He was one of the three persons described by defendant to the policeman as occupying a room in the house but paying no rent because he was a relative of the defendant. When called to testify he stated he did not pay rent. District counsel announced surprise, and asked permission to address leading questions to the witness, and thereupon asked the witness if he had previously stated to a police officer that he paid $4 per week room rent. The witness denied making such a statement. Thereupon, over objection, a police officer was permitted to testify that Steptoe had told him that he paid rent of $4 per week.

Our Code (1940, § 14—104) expressly provides that the trial court, when satisfied that a party producing a witness has been taken by surprise, in its discretion may permit the party to prove that the witness has made to the party or his attorney statements substantially variant from his sworn testimony, provided the circumstances of the supposed statements are first called to the witness's attention and the witness asked if he made such statements and, if so, allowed to explain them. "This section of the Code merely reduced to concrete form the established rule." Smith v. United States, 57 App.D.C. 71, 17 F.2d 223, 224. And the Code also expressly provides that the contradictory statements are admissible "for the purpose only of affecting the credibility of the witness." Johnson v. Newton, 58 App.D.C. 118, 25 F.2d 542.

Since the prior contradictory statements are admitted only for impeachment purposes, they are not received as affirmative proof of fact for any other purpose. "Of course, the contradictory statements can have no legal tendency to establish the truth of their subject-matter." Southern Railway Co. v. Gray, 241 U.S. 333, 337, 36 S.Ct. 558, 560, 60 L.Ed. 1030. And in jury cases, the jury should be so instructed. Smith v. United States, supra; Bedell v. United States, 63 App.D.C. 31, 68 F.2d 776; United States v. Graham, 2 Cir., 102 F.2d 436, certiorari denied 307 U.S. 643, 59 S. Ct. 1041, 83 L.Ed. 1524. Cf. Ellis v. United States, 8 Cir., 138 F.2d 612.

As the contradictory statements are received only for impeachment purposes, it is apparent that their sole legitimate effect is to cancel or neutralize the adverse answer of the witness. They are "allowed for the purpose of counteracting actually hostile testimony with which the party has been surprised." Hickory v. United States, 151 U.S. 303, 309, 14 S.Ct. 334, 336, 38 L.Ed. 170. From this it follows that contradictory statements will not be received where the witness's testimony is not prejudicial to the party's case. To justify impeachment by this method, it must appear that the witness testified to a fact which tended to destroy or injure the party's case or contradicted evidence which he was reasonably relied on to corroborate. Weaver v. Baltimore & O. Railroad Co., 3 App.D.C. 436, 450. Otherwise the party is not prejudiced and there is no occasion for neutralizing the testimony.

In the instant case Steptoe testified he paid no rent. Evidently the prosecution expected him to testify that he paid rent and was disappointed and surprised by his answer. But there was no testimony by any other witness that Steptoe paid rent, and, therefore, his answer did not contradict in any manner any Government testimony. Had the prosecution offered or

been prepared to offer other testimony that Steptoe was a paying roomer, then it would have been proper to receive the contradictory statements in order to neutralize the adverse effect of his answer on the other testimony. But, as before observed, the prosecution had no such other testimony. It does not urge here that there was any evidence that Steptoe was a paying roomer. Why then was it necessary to counteract his testimony? The Government's case was as strong with Steptoe's testimony as without it. Had the impeaching testimony not been received, the case would have stood with defendant's statement that Steptoe paid no rent and with Steptoe's own testimony to the same effect. If the impeaching testimony was limited, as the statute expressly provides, to affecting Steptoe's credibility, and assuming it had the full effect of completely cancelling Steptoe's testimony, then the case would stand as if Steptoe had not testified, but defendant's statement that Steptoe paid no rent would remain uncontradicted and unimpeached. In either situation, there was no evidence that Steptoe paid rent.

Steptoe's testimony, therefore, while not beneficial to the prosecution, was not prejudicial. Impeaching it was not necessary to the Government's case and could not aid it. The only effect of the impeaching testimony was the possibility of it receiving some credit as affirmative proof that Steptoe paid rent—and the statute and authorities say it shall not receive such credit. Impeaching Steptoe was a useless gesture from the prosecution's viewpoint. It would accomplish no good if confined to its legitimate effect. But the danger of the impeachment was its psychological effect, the danger that the court would be unable to confine it within its proper limits as purely impeaching evidence and accord to it

some weight as affirmative evidence. The contradictory statements not only contradicted Steptoe but they also had the effect of contradicting defendant's statement to the first police officer that Steptoe paid no rent.

Whenever evidence is received for a limited purpose, there is always danger that the court or jury may consciously or unconsciously fail to keep its evidentiary effect within its limited purpose. The human mind, whether that of court or juror, cannot easily accept evidence for one purpose and wholly reject it for another. Of course, in every case of evidence received for the limited purpose of affecting a witness's credibility, there is the same danger of it being given a broader effect, but that is a chance that must be taken when the impeachment is required by the necessities of the case. But when, as here, there is no necessity for impeachment, the chance ought not to be taken. United States v. Block, 2 Cir., 88 F.2d 618, certiorari denied 301 U.S. 690, 57 S.Ct. 793, 81 L.Ed. 1347; Kuhn v. United States, 9 Cir., 24 F.2d 910, certiorari denied Lee v. United States, 278 U.S. 605, 49 S.Ct. 11, 73 L.Ed. 533; Hull v. State, 93 Ind. 128; Moore v. Chicago, St. L. & N. O. Railroad Co., 59 Miss. 243; Langford v. Jones, 18 Or. 307, 22 P. 1064, 1065.

What effect this inadmissible testimony had upon the trial judge, who heard the case without a jury, we, of course, cannot know with certainty; but it is altogether possible that such testimony influenced the court to some extent in arriving at its conclusion of defendant's guilt beyond a reasonable doubt. For this reason the judgment must be reversed.

Reversed with instruction to award a new trial.