## YOUNG v. UNITED STATES.
### No. 11825.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 8, 1954.

Decided April 8, 1954.

Petition for Rehearing Denied June 4, 1954.

See also 14 F.R.D. 406.

---

Mr. Miller W. Marshall, Washington, D. C., for appellant.

Mr. J. Frank Cunningham, Atty., Dept. of Justice, with whom Messrs. Leo A. Rover, U. S. Atty., and William A. Paisley, Sp. Asst. to Atty. Gen., were on the brief, for appellee. Messrs. Lewis A. Carroll, Asst. U. S. Atty., and William J. Peck, Asst. U. S. Atty. at the time the record was filed, also entered appearances for appellee.

Before WILBUR K. MILLER, FAHY and WASHINGTON, Circuit Judges.

FAHY, Circuit Judge.

This appeal is from a judgment of conviction of perjury charged to have been committed before a grand jury of the United States in the District of Columbia.[1] The indictment is in five counts. The third and fourth were abandoned during the trial because of insufficient evidence to sustain them. The case was submitted to the jury on the remaining three counts. About five hours after the jury retired it announced agreement upon a verdict of guilty on the first count, which was received by the court. Thereupon the two remaining counts were dismissed by consent of the Government. Thus the conviction was on count one alone.

The grand jury before which the perjury is charged to have been committed was investigating matters relating to the Reconstruction Finance Corporation, hereinafter referred to as the RFC. The purpose of the investigation was to determine whether Federal criminal statutes had been violated in connection with the RFC's operations. Hearings of a subcommittee of the Senate Committee on Banking and Currency had occasioned a report of the subcommittee criticizing the activities of representatives of applicants seeking to obtain loans from the RFC.

Defendant Herschel Young, who maintained offices in Washington, was subpoenaed to appear before the grand jury and to produce his records relating to representation of such applicants. Count one of the indictment charges that on or about September 20, 1951, he gave to the grand jury under oath false testimony that he never represented anyone before the RFC whereas in fact, as he well knew and believed, this was not true in that he did represent persons and corporations before the RFC in connection with applications, loans and other transactions.

---

1. "Every person who, having taken an oath or affirmation before a competent tribunal, officer, or person, in any case in which the law authorized such oath or affirmation to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, wilfully and contrary to such oath or affirmation states or subscribes any material matter which he does not believe to be true, shall be guilty of perjury; and any person convicted of perjury or subornation of perjury shall be punished by imprisonment in the penitentiary for not less than two nor more than ten years. * * *" § 22-2501, D.C.Code (1951).

In support of its charge the Government undertook to prove, among other things, that defendant had represented the Peerless Tool and Engineering Company of Chicago in connection with an application for a loan. The president of the Company, Otto B. Lawrenz, was called by the Government as a witness. In its examination of him the Government was permitted to read in open court considerable testimony he had given before the grand jury. It is urged by the accused that this was prejudicial error. We agree and now state in some detail the circumstances which lead to this conclusion.

Lawrenz testified on the trial that Peerless had made application to the RFC for a loan, prior to which, in October, 1948, he had met defendant in Chicago in reference to a renegotiation matter; but he did not think he had discussed with him or in his presence the loan application. He also saw defendant in Washington, in November, he thought, when again they talked mainly about the renegotiation matter though the meeting also turned into a talk about an application for an RFC loan. Lawrenz's recollection was that a Mr. Harper, an engineer in defendant's office who was also present, mentioned that if Lawrenz would make the application "there may be some help on it". Defendant was present but did not say very much of anything. The only understanding reached was with respect to sending blueprints to Peerless for prospective work to be done by the Company "[a]nd also that we [Peerless] would send the application through Washington and send him [defendant], I think, a copy of it, something to that extent." The witness did not remember whether or not a copy was subsequently sent to defendant. In March of 1949 Lawrenz received a notification to come to a Mr. Dodd's office at the RFC. He came to Washington accompanied by Miss McEvilly, Assistant Secretary and Treasurer of the Company. They thought it would be a good idea if defendant went with them to the RFC. They had been told by a Mr. Balmer, who had originally introduced defendant to the witness in Chicago, that defendant probably would be of some help. They called defendant and joined by him and Harper went to Dodd's office. Dodd asked defendant what his connection was and he replied that he was "our [Peerless'] Washington representative, taking care of some of our Washington business." The conference lasted about an hour. At Dodd's suggestion they had a conference after lunch with Colonel Snyder, who had also been present at the conference with Dodd. Lawrenz further testified that he had not seen defendant since then until the first day of the trial, but had a letter from him asking what Peerless was going to do about the loan. The letter was admitted in evidence.[2] In the meantime it had been decided that because of all the requirements and obligations Peerless did not think the loan worthwhile. There was also put in evidence a letter of March 31, 1949 from Lawrenz to defendant which set forth "additional information requested in connection with the RFC loan". Lawrenz testified that he dictated the letter and thought defendant requested it.

Lawrenz further testified that Peerless paid defendant $500 in two checks, one for $300 and one for $200, but that he did not know exactly the purpose of the payments though he thought they were mainly for work defendant had done on renegotiation. Government counsel asked him if his memory would be refreshed about that. The witness replied that he tried to refresh himself

2. It reads as follows:

June 22, 1949

Dear Mr. Lawrenz:
 Since we have heard nothing from you, and you have not answered the letters from R.F.C., it is suggested that you contact the agency office of R.F.C. in Chicago and ask that your application be withdrawn.

Sincerely,
Herschel Young

that day and had not been able to, "outside that I know he did quite a bit of work on renegotiation and never been paid for it". Being then asked what matters other than renegotiation defendant handled for him Lawrenz said defendant sent some blueprints for work that Peerless might be interested in doing. Pressed to tell the jury for what purposes defendant was in the employ of Peerless, Lawrenz replied,

> "It was no definite arrangement made for any employment for Mr. Young, only casual items that came up, such as renegotiation, which was started—that was the original start of the work—and trying to probably get us orders or work to figure on, and also this item at RFC."

Asked if any of the $500 compensation was for work defendant did at the RFC the witness replied "I do not know." In response to a question of the court he said:

> "I think we were asked to send him some expense money, if I remember right. What that was on I do not know, Judge."

Over objection of defense counsel the court then permitted the Government to attempt to refresh the witness' recollection by showing him a part of his grand jury testimony. On objection to impeaching the witness in this manner, the court said,

> "This is not an attempt to impeach a witness, this is an attempt to refresh the witness' recollection, when the witness said he couldn't remember."

Having read—not aloud, but silently—the portion of his prior testimony designated by Government counsel the witness was asked if it refreshed his recollection as to the purpose for which defendant was paid. He replied that it refreshed his recollection that he did not know but thought the payments were for renegotiation and an expense ac-

count. The Government was then permitted over objection to ask the witness if he had not told the grand jury the payments were to cover both the RFC loan problem and the matter of getting Government contracts. The witness said he did, but "I think I also mention in there—* * * renegotiation." He again stated that he did not know what the payments were for, except in connection with renegotiation work, and said he did not know how much work was done on the RFC loan application. On defense counsel's objection that the following question was leading,

> "Did you retain Mr. Young for the two purposes—that is, to get business for you here in Washington and to help you with your loan application?"

the court ruled that since it was obvious the witness was reluctant, if not entirely hostile and antagonistic, Government counsel would be permitted on direct examination to ask the type of question proper only to cross-examination. Whereupon Government counsel was permitted to read aloud, in the presence of the jury, from the minutes of the grand jury proceedings, pausing intermittently as indicated to ask the witness if he were not so questioned and if he did not so answer, as follows:[3]

Q Question: "And at the same meeting you discussed with Herschel Young his possible assistance to you and your company in connection with the RFC loan problem that you had, did you not?"

Answer: "That is right."

Question: "So he was retained, was he not, for two purposes, is that correct?"

Answer: "Yes, sir, that is correct."

Question: "Referring again to these two checks, what was the purpose of the two checks?"

Answer: "As far as I know, it was expense on account."

---

3. The quotation marks enclose the questions and answers read from the grand jury minutes.

Question: "What does that mean?"

Answer: "We sometimes give the men who work for us a check for expenses on account and we account for them later on. But of course Mr. Young hasn't accounted for anything."

Question: "By 'on account' you mean he was to account to you for services performed for you?"

Answer: "Yes, or moneys he had spent."

Do you remember giving that testimony?

A Yes, with one exception. I thought I had renegotiation in there.

Q I haven't completed. I just want to know if you remember that testimony.

A That's correct.

Q Did he ever render you an expense account?

A No, sir.

Q Were you asked these further questions, and did you give these further answers:

Question: "All moneys he had spent in connection with services he had performed?"

Answer: "Yes, sir, which would be deducted later on."

Question: "Does that mean services performed in connection with procuring Government contracts for your company and assisting you in the RFC loan problem?"

Answer: "I would say yes. I would say that is correct."

Question: "It would cover both situations?"

Answer: "I think it would."

Question: "Is there any doubt?"

Answer: "No. Well, the only doubt is, I don't fully recollect what it is. To the best of my knowledge, that is what it is."

Question: "I mean, he is retained by you pursuant to arrangements you arrived at at a conference in Chicago to get Government contracts and to assist you in connection with the RFC loan application?"

Answer: "That is right."

Question: "There is no doubt about that?"

Answer: "No; sir, there is no doubt about that."

Question: "And you are certain about that?"

Answer: "That is right."

"And in connection with the services he performed on both of these matters you paid him expenses on account. Is there any doubt about that?"

Answer: "I think that is correct."

Question: "You have a note and an expression of doubt in your voice."

Answer: "I don't exactly remember, and I wouldn't want to say anything that is not correct."

Question: "We have showed you one of two letters here in which, number one, you transmitted certain information."

Answer: "That's right."

Question: "To be used in connection with the RFC loan according to the terms of the letter of March 31, 1949. On another occasion you sent him a copy of the loan application."

Answer: "That is right."

Did you give those answers to those questions?

A Yes, sir.

Q Now do you remember that you did send him the loan application?

MR. MARSHALL [Counsel for defendant]: I object to the question. The question has been answered.

THE COURT: Objection overruled.

THE WITNESS: I still don't remember.

Q Were you asked this question: "And you also sent him various documents so he was assisting you on the RFC loan or at least he told you he was assisting?"

Answer: "Yes, he did tell me."

Is that correct?

A Correct, yes, sir.

Q "Now, what were you paying him for?"

Answer: "He said he needed expense money."

Did you give that testimony?

A I believe I did.

Q Is that correct?

A Yes, sir.

Q "Expenses in connection with RFC problems and services he performed in that direction?"

Answer: "I don't know, but I think it was both."

Did you give that testimony?

A I gave that testimony, but the only thing that I questioned about my own testimony, that I did not mention renegotiation, because that was the biggest work that he done.

Q You remember giving that testimony?

A Yes, sir.

Lawrenz was then asked "Was Mr. Young your representative here in Washington in connection with this RFC loan application?" to which he replied, "Yes, I believe he was." The witness was then turned over to the defense. Thereupon the court called counsel to the bench and stated, out of the hearing of the jury:

"Lest there be some misunderstanding * * * you were reading those questions and answers to the witness and his stating that he did give that testimony, that does not make that testimony in this case * * *. It is only used to refresh his recollection."

No such statement was made to the jury at any time. So far as the jury was concerned the grand jury minutes read in open court was apparently "testimony in this case." The Government thus supplemented Lawrenz's testimony given on the stand by showing that when he was before the grand jury he had gone further to support the Government's position that defendant had represented Peerless in the loan matter before the RFC.

■ It is seen from the foregoing that an attempt was first made to have the witness refresh his recollection by silently reading a part of his grand jury testimony. We think this was not error.[4] The difficulty comes from what followed. The witness adhered to his testimony. Unsatisfied, Government counsel was permitted to read aloud much more of Lawrenz's grand jury testimony. This was not refreshing the witness' recollection. It was placing before the trial jury testimony previously given before a grand jury when there had been no cross-examination and defendant was not confronted with the witnesses against him. See U.S.Const. Amend. VI.

■ Cross-examination to refresh a witness' recollection on the basis of prior statements may be permitted, Hickory v. United States, 151 U.S. 303, 309, 14 S.Ct. 334, 38 L.Ed. 170; Di Carlo v. United States, 2 Cir., 6 F.2d

---

4. Putnam v. United States, 162 U.S. 687, 16 S.Ct. 923, 40 L.Ed. 1118, would appear to prohibit this since the material used for refreshing purposes had not come into being contemporaneously with the events at issue. In view, however, of U. S. v. Socony-Vacuum Oil Co., 310 U.S. 150, 236, 60 S.Ct. 811, 84 L.Ed. 1129, we cannot say that the rule of the Putnam case remains unimpaired. See Fanelli v. United States Gypsum Co., 2 Cir., 141 F.2d 216, 217–218.

Nor do we think it was an abuse of discretion to permit the Government, on the theory its witness was hostile or reluctant, to ask leading questions as if on cross-examination. See 3 Wigmore, Evidence § 915 (3d ed.).

364, 367–368, certiorari denied, 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168;[5] 3 Wigmore, Evidence § 764 (3d ed.); but the contents of the statements are not to be put in evidence before the jury. The Supreme Court said in U. S. v. Socony-Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129,

> "* * * there would be error where under the pretext of refreshing a witness' recollection, the prior testimony was introduced as evidence. Rosenthal v. United States, [8 Cir.] 248 F. 684, 686. * * *"[6]

In the Rosenthal case cited by the Supreme Court the defendant was tried for false swearing before a referee in bankruptcy. His conviction was reversed, one ground being the admission in evidence of previous testimony which the chief Government witness had given before the referee. While the court said this witness could be examined as hostile and as one whose testimony surprised the Government, nevertheless

> "* * * it was improper to read to him all of his testimony before the referee, by way of cross-examination, and ask him, as every question and answer was read before the jury, 'Did you not on the former occasion testify as follows?' This was not for the purpose of refreshing his memory, but was in fact introducing his testimony, in an examination before the referee * * *. This was error. Commonwealth v. Jeffs, 132 Mass. 5; Chamberlayne on the Modern Law of Ev. § 3507." [248 F. 686.]

See, also, Stearman v. Baltimore & O. Railroad Co., 6 App.D.C. 46, 51–52; United States v. Cross, 20 D.C. (9 Mackey) 365, 377; 3 Wigmore, Evidence §§ 763, 764, 904 at p. 400 (3d ed.). Lawrenz's grand jury testimony could not be added to that given on the trial consistently with the necessity of trying the accused on the evidence, not before the grand jury which indicted him, but before the jury trying him on the indictment.

Wheeler v. United States, decided recently by this court, 93 U.S.App. D.C. 159, 211 F.2d 19, is not controlling here. There a prior statement of a Government witness was read aloud, not to refresh the witness' memory, but to impeach her. To impeach a witness by means of a prior contradictory statement it is commonly necessary to read the statement aloud. Often it is only in this way that the jury can be made fully aware of the inconsistency between the prior statement and the present testimony.[7] But it is generally not necessary to read the statement aloud when it is used to refresh the witness' recollection.

The grand jury testimony was not admitted to impeach Lawrenz's credibility. The judge stated this explicitly at the trial. There was, moreover, no finding that the Government was surprised by the testimony. Under the governing statute such a finding must be made before a party may impeach his own witness. § 14–104, D.C.Code (1951).[8] But even when a prior statement is used to impeach it is admissible

5. The Di Carlo case might be read to support the use here made of the grand jury testimony. But such a reading would we think be inaccurate. There, though the cross-examination was on the basis of prior contradictory statements, the court said the witness' "actual evidence before the grand jury was not introduced." The court also said the case did not present the abuse which occurred in Rosenthal v. United States, 8 Cir., 248 F. 684, where, as seen infra, the situation was quite like that now before us.

6. Such was not the case in U. S. v. Socony-Vacuum Oil Co. The Court pointed out that the grand jury testimony was used simply to refresh the recollection of the witnesses, and not as independent affirmative evidence.

7. In Wheeler v. United States the author of the present opinion dissented because of his view that the evidence admissible on credibility was permitted to be used as testimonial evidence.

8. "Whenever the court shall be satisfied that the party producing a witness has

solely to affect credibility and is not to be considered as support for the truth of its contents. Ibid.; 3 Wigmore, Evidence § 906 (3d ed.). Thus, in Bedell v. United States, 63 App.D.C. 31, 68 F.2d 776, the prior inconsistent evidence was carefully circumscribed by the court so that the jury would not consider it as testimonial evidence against the accused. So, too, in Smith v. United States, 57 App.D.C. 71, 72, 17 F.2d 223, 224, where the trial court cautioned the jury that the statement "which was not made in court" was admissible simply to impeach the witness. "* * * it is not evidence of the facts stated in the paper at all." Presumably the use of the prior statement in Owens v. United States, 61 App. D.C. 132, 58 F.2d 684, was also so limited, "in conformity with the rule announced in Smith v. United States". See, also, Kuhn v. United States, 9 Cir., 24 F.2d 910, 913, certiorari denied, 278 U.S. 605, 49 S.Ct. 11, 73 L.Ed. 533. In the case at bar the record is explicit that impeachment, with its limited use under both decisions and statute, was not attempted.

◼ We conclude that the reading before the trial jury of the grand jury testimony was within neither the rule for refreshing a witness' recollection, nor for cross-examining a witness turned hostile, nor for impeachment.[9] It comes within no exception to the rule excluding hearsay. The fact that the witness was on the stand and subject to cross-examination does not supply the omission of confrontation and cross-examination at the time the grand jury testimony itself, later read to the trial jury, was given. Compare 3 Wigmore, Evidence § 1018 (3d ed.).

◼ The Government urges, however, that if there was error it was harmless. See Rule 52(a), Fed.Rules Crim.Proc., 18 U.S.C.A.; Stein v. People of State of New York, 346 U.S. 156, 193, 73 S.Ct. 1077, 97 L.Ed. 1522. We cannot agree. Lawrenz was a principal witness in support of the Government's position that the accused represented Peerless in connection with a loan application before the RFC. His testimony was significant and was so treated at the trial. Though without it there still would have been a case for the jury, nevertheless if the jury believed beyond a reasonable doubt that accused so represented this Company and wilfully and intentionally testified to the contrary before the grand jury their verdict could rest upon these findings alone. Moreover, the important question in connection with the Peerless evidence was whether accused considered his activities to be "representation" before the RFC. The case turned primarily upon his denial of "representation" in connection with a loan application. His position was that his assistance to Peerless did not amount to what he considered to be such representation. On this phase of the case, a major one in terms of defendant's guilt or innocence, Lawrenz's testimony was important. We cannot say the same verdict would in any event have been reached without it, or that his grand jury testi-

been taken by surprise by the testimony of such witness, such party may, in the discretion of the court, be allowed to prove, for the purpose only of affecting the credibility of the witness, that the witness has made to such party or to his attorney statements substantially variant from his sworn testimony about material facts in the cause; but before such proof can be given the circumstances of the supposed statement sufficient to designate the particular occasion must be mentioned to the witness, and he must be asked whether or not he made such statements and if so allowed to explain them."

9. The error is not cured by failure of the defense to ask for an instruction on the theory it was admitted for the limited purpose of refreshing the witness' recollection. This was contrary to the defense position that it was not admissible for any purpose.

The error and its prejudicial character are emphasized by a similar occurrence during the testimony of Miss McEvilly. We do not enlarge the opinion by detailing this matter because the Lawrenz incident is more important and is fully discussed.

mony which the trial jury heard did not influence their verdict.

 The accused also presses other points. We have examined them but find there no ground for reversal. They include (1) an attack upon the sufficiency of the indictment, which is answered by our decision in E. Merl Young v. United States, 94 U.S.App.D.C. ——, 212 F.2d 236, applying the decision of the Supreme Court in United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113; (2) the contention that the indictment should have been dismissed because defendant's statements before the grand jury which were alleged to have been wilfully and intentionally false were taken out of context. We think the indictment itself was not bad on this ground. There was, however, an issue for the jury on the evidence as to whether there was intentional and wilful false swearing, considering the full context of defendant's grand jury testimony; (3) overzealousness of the prosecutor in cross-examination and improper argument to the jury. This contention embraces the claim of wrongful cross-examination of the accused as to his relationship with E. Merl Young, his brother, who, two weeks before the present trial, had been convicted of perjury growing out of the same Congressional and grand jury investigations, with attendant newspaper publicity. The evidence was admitted as relevant on the question of defendant's motive after he had denied having any reason to testify falsely before the grand jury. Had the defense requested an instruction as to the limited relevancy of this evidence it should have been granted in order to avoid attributing to the defendant any guilt which the jury might have attached to another person. But no such instruction was requested; and while the evidence itself was objected to we cannot say it should have been excluded as too remote to throw any light on the question of defendant's motive.

Reversed and remanded.