Luther O. TROUBLEFIELD, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19657.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 13, 1966.

Decided Dec. 12, 1966.

Petition for Rehearing En Banc Denied Jan. 13, 1967.

---

Mr. Joseph V. Gartlan, Jr., Washington, D. C. (appointed by this court), for appellant.

Mr. Charles K. Bergin, Jr., Atty., Dept. of Justice, of the bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Joel D. Blackwell, Asst. U. S. Attys., were on the brief, for appellee. Mr. James A. Strazzella, Asst. U. S. Atty., also entered an appearance for appellee.

Before DANAHER, Circuit Judge, and BASTIAN, Senior Circuit Judge, and WRIGHT, Circuit Judge.

DANAHER, Circuit Judge:

A jury found this appellant guilty of assault with a dangerous weapon. On appeal it has been contended that the conviction must be reversed on the ground of "plain error" arising from the Government's cross examination of its own wit-

ness, one Strohman. The latter recanted and repudiated his pretrial signed statement in which Strohman had implicated the appellant.

The jury could have found that about 1:30 on the morning of November 19, 1964, a schoolteacher named Robert Webb with his friend Terrell boarded a bus. At the same time, Troublefield and Strohman entered the bus with a third young man whom neither Strohman nor Troublefield identified in their testimony. Troublefield argued with the bus driver over a fare, after which the appellant and Strohman took seats in the rear of the bus.

As Webb was preparing to alight, he was engaged in conversation with Terrell. Appellant asked Webb "What did you say?" and Webb replied "Nothing to you, sir." Troublefield then asked "What are you looking at?" Webb got off the bus, and as he stood on the curb waiting for the bus to pass, the back window was opened. He then looked up and saw Troublefield put his arm out the window. He was holding a gun. He pulled the trigger. The bullet entered the upper part of Webb's body, passed down through the rib cage, fractured two ribs, then lodged in the base of the victim's spine, and is still in his body. Webb positively identified Troublefield as the man who had shot him. He had seen Troublefield for several minutes before both had boarded the bus, and Troublefield was the one who had addressed to Webb the remarks previously noted. Webb testified that he recognized Troublefield, still in the lighted bus

when, after being attracted by the raising of the window, Webb looked up and "I saw Troublefield put his hand out the window and I saw the gun."

The Government produced no other witness who would testify that Troublefield had fired the gun, but the Government had in its possession a statement, signed by Strohman.[1] As Strohman had been an eyewitness, he was called, he was called to the stand. After he had given his name and address, the following occurred:

[The prosecutor]: "Q. Do you know the defendant in this case, Luther O. Troublefield?

"A. Yes, I know him."

Strohman testified he could not say how long he had known Troublefield. He then was asked:

"Q. Now, Mr. Strohman, were you with him on 7th and Florida Avenue some time around 1:30 or two o'clock on the early morning of November 19, 1964?

"A. Do I have to answer these questions?

"The Court: Yes, sir. If you know the answers, yes, sir.

"The Witness: I can't remember that. I can't remember that good.

\* \* \* \* \* \*

"I remember they said someone was shot but I don't remember what took place.

\* \* \* \* \* \*

"The Court: You mean you didn't see the shooting, sir?

1. Before trial, the appellant was accorded a hearing on his motion to suppress. Defense counsel called Strohman as his witness to establish that he was at the scene with Troublefield when the latter was arrested. By that time, Troublefield was in the rear seat of a parked automobile. An officer testified that he saw Troublefield put something under the seat of a car which, it presently developed, was a .22 caliber revolver. Strohman testified that he saw the police search the car, before they took him from the car. He said he had not been able to see what the police there found. On cross examination by the Government, Strohman testified he had not seen Troublefield with a gun in the car, nor did Troublefield "pitch" the gun to him, at which point the Government showed defense counsel Government's Exhibit No. 1 for identification. The judge asked Strohman "Is that your writing?" The witness answered: "Yes that's my writing but I didn't sign no paper like that."

The Government then asked Strohman no further questions.

After hearing other witnesses, the judge denied the motion to suppress. Trial commenced the next morning.

"The Witness: No, I wasn't trying to see it.

"The Court: Were you there when the shooting took place?

"The Witness: Yes, I was."

[The prosecutor]: "Q. Do you know who did the shooting?

"A. No."

Strohman testified that he did not "know too much"

"that is going on about this trial * * there is a whole lot I don't remember and there is a whole lot that was taken down in papers that they showed me and said I signed and I don't remember too much what I said, all the police asking me and pulling on me and asking all kinds of questions about—I don't remember too much what I said or really what took place."

It was brought out that Strohman had been taken to Juvenile Court "as a result of this," after which the prosecutor stated "I wish to announce surprise with this witness at this time." The judge instructed the prosecutor to lay "the foundation." Strohman acknowledged he had been arrested shortly after the shooting. He denied he had given a statement in writing. "I didn't write nothing to no one." Asked if "they were trying to get" him "to say something," he answered "I can't remember."

Shown the Government's exhibit for identification, Strohman testified "Yes, that's my signature." The statement was handed first to defense counsel and then to Strohman. The prosecutor asked the witness to read over the statement and "see if that refreshes your recollection as to what happened." The witness read the statement and answered "It doesn't."

A bench conference followed. The prosecutor pointed out that Strohman at the pretrial hearing had been asked nothing about the "first part" of the statement which indicated that Troublefield had shot Webb.

After the judge had read the statement, defense counsel said:

"I would ask you to instruct the jury after the witness testifies that it only goes to his credibility."

The judge answered: "All right, sir. Let me know when you want me to do it, sir."

■ "When a party is taken by surprise by the evidence of his witness, the latter may be interrogated as to inconsistent statements previously made by him for the purpose of refreshing his recollection and inducing him to correct his testimony; and the party so surprised may also show the facts to be otherwise than as stated, although this incidentally tends to discredit the witness." [2]

The Supreme Court also pointed out that by statute it has been provided that in case the witness shall in the opinion of the judge prove adverse, a party may, by leave of the judge, show that he has made at other times statements inconsistent with his present testimony, and this is allowed for the purpose of counteracting actually hostile testimony with which the party has been surprised.[3]

Congress has provided for the District of Columbia just such a statute, D.C. CODE § 14–102 (Supp. IV, 1965):

"When the court is satisfied that the party producing a witness has been taken by surprise by the testimony of the witness, it may allow the party to prove, for the purpose only of affecting the credibility of the witness, that the witness has made to the party or to his attorney statements substantially variant from his sworn testimony about material facts in the cause. Before such proof is given, the circumstances of the supposed statement sufficient to designate the particular occasion must be mentioned to the witness, and he must be asked whether or not he made the statements and if so allowed to explain them."

**2.** Hickory v. United States, 151 U.S. 303, 309, 14 S.Ct. 334, 336, 38 L.Ed. 170 (1894).

**3.** *Ibid.*

■ It has long since been held in this Circuit that in the discretion of the trial judge a party producing a witness when surprised by his testimony may be allowed to prove for the purpose of affecting the credibility of that witness that he has earlier made statements substantially at variance from his sworn testimony on material facts.[4] Before the actual proof may be given, the witness must be confronted with the circumstances of the earlier statement, and he must be asked whether or not he made such statements and be given an opportunity to explain them. Wide latitude in the discretion of the judge is to be allowed in the examination of a recalcitrant witness.[5]

A not dissimilar situation arose in Bedell v. United States,[6] where it was pointed out that when the Government called a certain witness, "it gave him credit with the jury as a truthful and reliable witness." Thus, when his testimony proved to be contradictory to his pretrial statements and Government counsel had thus been taken by surprise, this court commented:

> "Had the testimony gone to the jury without further examination concerning [the witness's] sincerity, accuracy, and truthfulness, the jury would have received these statements as testimony called for and introduced by the government itself. Under such circumstances it was proper that the government might cross-examine [the witness], and for that purpose make use of his prior written statement in order to refresh his recollection and induce him to correct his testimony. In such case the latitude to be allowed in the

cross-examination of the witness is within the discretion of the trial justice. This rule is supported by abundant authority."[7]

Here the prosecutor had called Strohman as its witness. The prosecutor had in his possession the statement by Strohman who was in the company of Troublefield aboard the bus at the time of the shooting and who was with Troublefield when both were arrested. He represented that he had present an officer who would testify that Strohman had signed the statement. The case against Strohman had been determined in the Juvenile Court. As the trial judge observed, "This man can in no way incriminate himself because this matter was disposed of." What Strohman had said in his statement was known to the defense counsel, for he had read it the previous day as well as at the trial. Had the Government not called[8] this eyewitness, inevitably the defense would have asked for a "missing witness" instruction with appropriate argument designed to impugn the substance of the Government's case. Although admitting his presence when the shooting occurred, Strohman at trial denied that he had seen the shooting and swore that he did not know who had done the shooting.

■ So it was that at the bench conference the prosecutor presented to the trial judge the statement signed by Strohman. The witness himself had read the statement and in response to a question by the judge swore that he had never seen that paper before. After additional questioning by the prosecutor and by the judge, the latter "properly"[9] ruled that

---

4. Smith v. United States, 57 App.D.C. 71, 72, 17 F.2d 223, 224 (1927).

5. *Ibid.*

6. 63 App.D.C. 31, 32, 68 F.2d 776, 777 (1934).

7. *Ibid.*

8. It would have been in order for the trial judge to call Strohman as a witness where he might have been cross-examined by both sides. United States v. Lutwak, 195 F.2d 748, 754 (7 Cir. 1952), aff'd, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593

(1953); Litsinger v. United States, 44 F. 2d 45, 47 (7 Cir. 1930); cf. Wheeler v. United States, 93 U.S.App.D.C. 159, 165, 211 F.2d 19, 25 (1953), cert. denied, 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140, rehearing denied, 348 U.S. 852, 75 S.Ct. 21, 99 L.Ed. 671 (1954), where the trial judge had refused the prosecutor's request that the court make the witness its own.

9. Bartley v. United States, 115 U.S.App. D.C. 316, 318, 319 F.2d 717, 719 (1963); Wheeler v. United States, *supra* note 8.

the foundation for surprise had been laid and the prosecutor had the right to put the questions.

█ It was pointed out that the portions of the statement which directly implicated Troublefield had not been the subject of examination during the hearing on Troublefield's pretrial motion. The trier's ruling that "surprise" existed, we have said, may not be disturbed unless it plainly appears that the ruling is without a rational basis.[10] In the *Wheeler* case we further ruled that it was not incumbent upon the prosecution to believe that once the witness

"was placed under oath on the witness stand and removed from the influence of the accused, she would contradict both her first statement, given immediately after the alleged crime, and her subsequent testimony before the grand jury. The prosecution could reasonably have expected the threatened contradiction to dissolve in the atmosphere of the witness stand. Thus, when it did not dissolve there was a rational basis for the trial court's being satisfied that the prosecution had 'been taken by surprise' within the meaning of the statute." [Footnotes omitted.] [11]

The prosecutor addressed the court:

"You are going to instruct the jury that this is not evidence and it only goes to his credibility?

"The Court: I don't think it goes to his credibility. This is recollection."

Defense counsel agreed, commenting "Yes." Strohman's statement was not offered in evidence. The judge asked defense counsel if he desired that comment be made to the jury. Defense counsel said: "I would ask you to instruct the jury after the witness testifies that it only goes to his credibility." The judge replied "Let me know when you want me to do it, sir."

In due course, after the witness had insisted that he had no recollection of the series of events, the judge called counsel to the bench. He observed that the examination had gone to the "recollection" of the witness. As defense counsel agreed, the judge at once instructed the jury:

"Ladies and gentlemen, it is my duty at this time to instruct you that the statements which have been read from the paper which both counsel have had as you have seen, the questions put, and to which there was a response, no remembrance or no recollection, you are instructed that those statements are not evidence in the case. In other words, that is not testimony for your consideration in the case. You will ignore it."

Turning to counsel, he asked "Anything further?" Defense counsel replied "No, sir," and the prosecutor stated "The Government is satisfied." There was no request from the defense for additional or more specific instruction on this aspect of the case, but that was not the end of the matter.

Defense counsel as will appear had evolved as a matter of defense tactics the possibility of making use of Strohman's appearance on the stand. He knew that several witnesses could (and when later called they did, positively), identify Troublefield as being on the bus and at the window. Additionally, the bus driver, Mr. Terrell (Webb's schoolteacher

10. Wheeler v. United States, *supra* note 8, 93 U.S.App.D.C. at 165, 211 F.2d at 25.

11. *Id.* at 165–166, 211 F.2d at 25, text and n. 15; Robinson v. United States, 113 U.S.App.D.C. 372, 376, 308 F.2d 327, 331 (1962), cert. denied, 374 U.S. 836, 83 S.Ct. 1887, 10 L.Ed.2d 1058 (1963); United States v. Graham, 102 F.2d 436, 442 (2 Cir.), cert. denied, 307 U.S. 643, 59 S.Ct. 1041, 83 L.Ed. 1524 rehearing denied, 308 U.S. 632, 60 S.Ct. 68, 84 L. Ed. 526 (1939); United States v. Maggio, 126 F.2d 155, 158–159 (3 Cir.), cert. denied, 316 U.S. 686, 62 S.Ct. 1275, 86 L.Ed. 1758 (1942); cf. Young v. United States, 94 U.S.App.D.C. 62, 68, 214 F.2d 232, 238 (1954), where it was decided that the prosecutor erroneously had been permitted to read to the trial jury the testimony given by the witness before the grand jury.

friend)· and one Upchurch, a passenger, as the testimony evolved, each had heard what they variously thought was a "firecracker," a "cherry bomb," or a "backfire" explosion. None knew at the time that Webb outside waiting for the bus to pass, had just been shot, and none actually had seen Troublefield do the shooting. How defense counsel was to give the jury a choice between Strohman and Troublefield as the guilty party emerged from counsel's closing argument. But it became clear that he did not want the jury, once again, to be told [12] that whatever Strohman said must be left out of the case.

After telling the jury that Strohman was a "very interesting witness," counsel argued to the jury:

"And I think it would only be a slight exaggeration in his testimony to say that he couldn't remember anything about anything. Why could he not remember anything about anything? He remembered clearly enough what precincts he was taken to that night. He remembered clearly enough how long he was questioned. And he remembered clearly enough being released, ladies and gentlemen, by the police. And he remembered clearly enough being picked up again a couple of days later as an accessory, he said, and taken into Juvenile Court.

"Why did he not remember whether that statement that [the prosecutor] cross examined him on, that statement that he admitted bore his signature, why did he not remember whether that statement was accurate? Was it because he was afraid of perjury, ladies and gentlemen, if he told the same story here in this court under oath? I want you to consider that carefully.

"I want you to consider that Strohman and Troublefield were together on that bus. I want you to consider that

there was no eyewitness identification of Troublefield either at the time he was arrested or while he and Mr. Strohman were being questioned at the police station. There could be no eyewitness identification at that time because Mr. Webb was in the hospital.

\* \* \* \* \* \*

"Ladies and gentlemen, why did the police release Strohman? Why didn't they charge him too?

"The Court: Ladies and gentlemen, you have nothing to do with Strohman. He is not before us. You have only to determine the guilt or innocence of this defendant. Strohman is not before you.

\* \* \* \* \* \*

"The Court: I have tried to indicate to the jury it is none of their concern. The defense counsel has nothing to do with charging another defendant. You have only one determination, whether this man [Troublefield] is guilty or not guilty."

Defense counsel thereupon contended to the judge at the bench that his theory of the defense was that either one of "those other two boys could have shot this man." The judge pointed out that Strohman had been charged, but because of his age was charged in a different court.

The judge carefully and adequately instructed the jury. He emphasized that guilt or innocence was to be determined from the testimony adduced from the witness stand. He instructed that if the Government had failed to establish beyond a reasonable doubt that this appellant had shot Webb, the jury need proceed no further. It would be bound to find the accused not guilty. Upon completion of the instructions, the prosecutor at the bench inquired concerning a further instruction as to Strohman. Ad-

12. In Bartley v. United States, *supra* note 9, we noted as proper an instruction at the close of the trial as to the limited purpose for which questioning had been permitted concerning the prior inconsistent statement. And see Carrado v. United States, 93 U.S.App.D.C. 183, 191, 210 F.2d 712, 721, text and n. 4 (1953), cert. denied, Atkins v. United States, 347 U.S. 1018, 74 S.Ct. 874, 98 L.Ed. 1140 (1954).

dressing defense counsel during that conference, the judge pointed out:

"That is in connection with Strohman, and a statement which was used to question him from.

"[Defense counsel]: I do not desire it.

"The Court: You do not desire it? You are correct that counsel has a right to ask for it, and I will give it. I thought we had very fully gone into that.

"[The prosecutor]: You did.

"[Defense counsel]: I have no desire for it.

"[The prosecutor]: But my understanding is the Court should go into it at that time [during trial] and again in its final instructions.[13]

"The Court: I can understand it if there be any request.

"[Defense counsel]: I appreciate [the prosecutor's] calling it to my attention. *I had specifically decided I did not require it.*" (Emphasis added.)

FED.R.CRIM.P. 30 expressly provides that no party may assign as error any omission from the charge

"unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

Here, not only was there no objection voiced by defense counsel, rather he expressly and specifically made clear that he was exercising a deliberate choice. He knew exactly what he was doing as is obvious from the argument to the jury. He waived further instruction as to the effect to be accorded to Strohman's presence on the witness stand and to his personally alleged lack of recollection of the events at issue. It served counsel's "theory" of the defense as he had frankly said.

■ At this late date to permit other counsel representing this appellant on appeal to seek reversal upon an aspect of the case so established by trial counsel would reduce to shambles the orderly procedures under which our trials must be conducted.

Our study of the record in this case has convinced us that there was no error affecting substantial rights. The judgment of conviction is

Affirmed.

J. SKELLY WRIGHT, Circuit Judge (concurring):

I read the court's opinion as affirming Troublefield's conviction on the ground that his lawyer consciously failed to object to the reading of Strohman's statement, hoping to weave it into a pattern of evidence tending to identify Strohman as the real culprit. If counsel did actually welcome admission of the statement, the trial judge, in letting it in, committed no error at all, plain or otherwise. While the transcript in this case is susceptible to contrary interpretations, the inference drawn by the court is backed by substantial evidence, and I am not prepared to dissent therefrom.